FEDERAL COMMERCIAL & SAVINGS BANK *v.* CONTINENTAL
LIFE INSURANCE CO.

INSURANCE—CYCLONE—DIRECTED VERDICT.
    In action on insurance policy under clause restricting liability
    of insurer to death caused by cyclone, where there was no
    evidence of cyclone, verdict should have been directed for
    defendant.

Appeal from St. Clair; Robertson (William), J.
Submitted January 20, 1932. (Docket No. 206, Cal-
endar No. 36,012.) Decided April 4, 1932. Rehear-
ing denied June 6, 1932.

Assumpsit by Federal Commercial & Savings
Bank, administrator of the estate of Alex T. Young,
deceased, against Continental Life Insurance Com-
pany on an accident insurance policy. Verdict and
judgment for plaintiff. Defendant appeals. Re-
versed, and judgment ordered entered for defend-
ant.

*Warren, Hill & Hamblen,* for plaintiff.

*Bratton & Bratton,* for defendant.

SHARPE, J. Plaintiff, as administrator of the es-
tate of Alex T. Young, brings this action to recover
the indemnity of $3,000, provided for in an insur-
ance policy issued by the defendant, "in consequence
of a cyclone or tornado." He was drowned in the
waters of Lake Superior on November 30, 1929. In
defendant's answer it denied that his death was so
caused. The trial court held that there was no proof
of a tornado. He submitted the question of whether

On meaning of "cyclone," "tornado," or other kind of wind
storm, in an insurance policy, see annotation in 8 L. R. A. (N. S.)
308; L. R. A. 1915B, 1094.

the storm was a cyclone to the jury, who found for the plaintiff, and judgment was entered thereon. Defendant reviews by appeal.

The deceased was the captain of a steam vessel called "Kiowa." It left Duluth on November 28, 1929, for Chicago. It was laden with flaxseed. While passing down Lake Superior, it encountered a severe storm. Plaintiff called but one witness, Patrick McCarty, the second mate on the vessel and the holder of a pilot's license on the Great Lakes. He testified that he had been sailing on the lakes since 1913; that it was the worst storm he had ever seen except one in 1913, and was quite similar to that; that the sea was very high, came over the sides of the boat and "tore all the after hatches off;" that—

"the seas was rolling and the wind was blowing, snowing and hailing. The boat would go down like this and come up like that (illustrating), snowing and hailing, window closed, couldn't look out nor nothing; couldn't see or hear nothing;"

—and that it was a storm of unusual violence; that deceased, in an effort to jump into a boat that was being launched, fell into the water and was drowned.

On cross-examination he testified:

"Q. Now, do you know what a cyclone is?

"A. A cyclone is—I am not very much experienced, but I believe that the wind goes around in circles and everything like that.

"Q. Yes. In a cyclone, the wind blows in a circle, does it not?

"A. Yes. * * *

"Q. And the wind was blowing steadily all the way down the lake from the time you left Duluth, steady wind; is that right?

"A. No, it would shift; just shift at times, shift two points one side and two points the other side; two points of a shift.

"*Q*. It never got in a circular motion. It was the wind coming from this direction?

"*A*. Northwest wind.

"*Q*. Northwest wind?

"*A*. Yes, sir.

"*Q*. Blowing from the northwest?

"*A*. Yes, sir.

"*Q*. All the time?

"*A*. Yes, sir."

The record of the coast guard station at Grand Marais was then put in evidence. It disclosed that the direction of the wind was from the northwest and its velocity at times from 48 to 56 miles per hour. While the defendant submitted proof as to the nature of the storm, it in no way strengthened that above referred to as to its being a cyclone.

In his instructions to the jury the trial court said:

"A cyclone has been defined in various of the standard dictionaries and I will give it to you as given in the Encyclopedia Britannica; it is defined as an atmospheric condition where the pressure is lowest at the center and that the winds in consequence tend to blow toward the center spirally inward, in a whirling motion. The Century Dictionary defines a cyclone as any atmospheric movement, gentle or rapid, general or local, on land or at sea, in which the wind blows toward the center. And Webster defines it as a storm characterized by high winds rotating around a calm center of low atmospheric pressure. I have given you those definitions so that it may enable you to apply them to the testimony in the case, in determining whether or not this particular storm comes within the definition of a cyclone and within the meaning of the policy when the word is used as I have read it to you."

The jury, in answer to special questions submitted to them, found that the vessel encountered a cyclone,

and that the death of the deceased resulted in consequence thereof. Defendant insists that its motion for a directed verdict, made when plaintiff rested and renewed at the conclusion of the proofs, should have been granted, as there was no sufficient proof that the storm was a cyclone.

The nature and character of the storm must be determined from the evidence submitted. That it was a severe one admits of no doubt. The liability of the defendant was restricted to death caused by a cyclone. No witness testified that it was such.

"The distinguishing characteristic of the cyclone or tornado is that of high winds rotating about a center of low atmospheric pressure, and this center moving with greater or less velocity across the country." *Maryland Casualty Co.* v. *Finch,* 77 C. C. A. 566 (147 Fed. 388, 8 L. R. A. [N. S.] 308).

If on land, the result of a cyclone is evidenced by its resistless force in twisting, breaking down, or uprooting trees, or unroofing buildings, and the term is so understood in common parlance. At the time of the captain's death, the boat was about 20 miles from the shore, and drifted in to a point about four miles from "Point Au Sable light."

Arthur J. Cronk, the "first officer" on the steamer, testified that a few days after landing he walked on snow shoes to the eastward to Grand Marais, 16 miles distant, and that no destruction had been caused by the wind to the trees or property on the shore. His testimony relative thereto was interrupted by an admission of plaintiff's counsel that "there was no damage to anything such as trees, houses or anything." The wind was blowing in the direction of this shore line, and, while the effect of a cyclone may be confined to a somewhat small area, we think this testimony has some bear-

ing upon whether the storm was in fact a ''cyclone'' or a heavy wind, accompanied by cold weather and a fall of snow. In our opinion, there was no evidence submitted under which the jury could find that the deceased lost his life ''in consequence of a cyclone'' as defined to them in the instructions given by the court, and the motion of the defendant for a directed verdict, renewed after verdict, for judgment *non obstante veredicto* should have been granted.

The judgment entered will be reversed, with costs to appellant, and the cause remanded, with direction to enter a judgment for the defendant.

CLARK, C. J., and MCDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.